UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Victor G., | File No. 26-cv-119 (ECT/SGE) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Todd Lyons, *in his capacity as Acting Director, Immigration and Customs Enforcement*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Pamela Bondi, *U.S. Attorney General*; Daren K. Margolin, *Executive Office for Immigration Review*; David Easterwood, *Field Office Director of St. Paul Field Office for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations*, | |
| Respondents. | |

---

Thomas R. Anderson, III, Anderson & Anderson Law, LLC, Minneapolis, MN, for Petitioner Victor G.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Lyons, Kristi Noem, Pamela Bondi, Daren K. Margolin, and David Easterwood.

---

Petitioner Victor G. is a Mexican citizen who has lived in the United States since January 2009, when he entered without inspection.[1] Pet. [ECF No. 1] at 4 ¶ 1 (under the heading "Parties"), 11 ¶ 1. In October 2024, Victor and his family applied for a U-visa

---

[1] Victor also lived in the United States from 2004 until he left in December 2008. Pet. at 11 ¶ 1. No party argues that Victor's previous time in the United States affects the legal analysis here.

certification. *Id.* at 12 ¶ 4; *see* ECF No. 5 ¶ 4. On November 29, 2025, Victor was given a bona fide determination by USCIS, which also gave him employment authorization and placed him in deferred action for four years. Pet. at 12 ¶ 4, 13 ¶ 5; ECF No. 1-1 at 8, 10; ECF No. 5 ¶ 5. Victor's criminal history includes violations for driving without a valid driver's license, driving with a revoked driver's license, failing to carry auto insurance, and speeding.[2] Pet. at 12 ¶ 3. On January 7, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Victor in Blaine, Minnesota, "while conducting targeted enforcement operations." ECF No. 5 ¶ 7. Victor was "transferred to El Paso, Texas for administrative removal processing," and he is "currently awaiting an immigration removal hearing." ECF No. 5 ¶ 7. However, at least as of his January 14, 2026 reply brief, Victor "still [has] not been placed in Removal Proceedings and has never been issued a Notice to Appear." ECF No. 6 at 2. There is nothing in the record indicating that USCIS has revoked Victor's grant of deferred action, which is set to last until 2029. *See* ECF No. 1-1 at 8 (November 29, 2025 USCIS Bona Fide Determination Notice stating that Victor's "employment authorization document and grant of deferred action are valid for a period of four years").

Victor challenges his detention under 28 U.S.C. § 2241. *See* Pet. His arguments are threefold. First, he asserts that because he received a bona fide determination and work authorization for a U-visa application, he was granted deferred action and should never

---

[2] There is no argument that these offenses subject Victor to mandatory detention under 8 U.S.C. § 1226(c).

2

have been detained. Pet. at 12 ¶ 4. Second, he claims he has been wrongly classified as an 8 U.S.C. § 1225(b)(2) detainee (whose detention is mandatory) rather than a 8 U.S.C. § 1226 detainee (whose detention is discretionary and who is entitled to a bond hearing). *Id.* at 2–3, 6–10; *see Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 961–62 (D. Minn. 2025) (explaining legal framework). According to him, that misclassification and denial of a bond hearing violate 8 U.S.C. § 1226(a) and his right to due process under the Fifth Amendment.[3] Pet. at 15–17. Third, he asserts that he is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873 (C.D. Cal. Dec. 18, 2025), and thus not subject to mandatory detention. Pet. at 10–11. Victor seeks a declaration that his detention is unlawful; issuance of a writ of habeas corpus ordering Respondents to release him immediately or provide him with a bond hearing; an injunction forbidding Respondents from transferring him out of the District of Minnesota during the pendency of his habeas petition; an injunction preventing Respondents from denying his bond under § 1225(b)(2); if an immigration judge grants such a bond, an injunction prohibiting Respondents from invoking the auto-stay provision found at 8 C.F.R. § 1003.19(i)(2) during the pendency of any bond appeal; and any other relief the Court "deems just and proper." Pet. at 16–17.

Victor's deferred action argument is persuasive. Judge Laura M. Provinzino thoroughly and succinctly described the U-visa legal framework in *M.M. v. Shea*. Order

---

[3] Though the Petition mentions the Administrative Procedure Act, *see* Pet. at 14–15, 16–17 (under "Prayer for Relief"), Victor does not bring an Administrative Procedure Act claim, *see id.* at 15–16.

3

Dismissing Habeas Petition, *M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW) (D. Minn. Aug. 1, 2025), ECF No. 24 at 2–5.  That framework is incorporated herein by reference.  *See id.*; *see also Nevarez Jurado v. Freden*, --- F. Supp. 3d ---, No. 25-CV-943, 2025 WL 3687264, at *3–4 (W.D.N.Y. Dec. 19, 2025) (describing legal framework).  "Deferred action" is "an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen's] case being made a lower priority for removal" but "does not confer any immigration status upon a[] [noncitizen]."  *See* Order Dismissing Habeas Petition, *M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW) (D. Minn. Aug. 1, 2025), ECF No. 24 at 5 n.3 (alterations in original) (quoting New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53015 n.2 (Sep. 17, 2007) (codified at 8 C.F.R. § 214.14) ("U-visa Interim Rule")).  "Approval of deferred action status means that, for . . . humanitarian reasons[,] . . .no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (Scalia J.) (quoting 6 C. Gordon, S. Mailman, & S. Yale-Loehr, *Immigration Law & Procedure* § 72.03[2][h] (1998)); *accord Nevarez Jurado*, 2025 WL 3687264, at *4.  "[A]n ever-growing number of district courts across the country have concluded[] that an unrevoked grant of deferred action prevents removal."  *Nevarez Jurado*, 2025 WL 3687264, at *8 (citing cases).

*Nevarez Jurado* is instructive.  Like Victor, Nevarez Jurado received a bona fide determination on his U-visa application and was given an employment authorization document and placed in deferred action for four years.  *Id.* at *2.  Less than three years

4

into his deferred action, Nevarez Jurado was detained by ICE, and a prior order of removal was reinstated. *Id.* There was "nothing in the record [to] indicate that USCIS ha[d] revoked Nevarez Jurado's grant of deferred action." *Id.*; *see also id.* at *9 n.10 ("USCIS apparently has done nothing to terminate Nevarez Jurado's deferred action."). Relying in part on Supreme Court cases in the Deferred Action for Childhood Arrivals ("DACA") context, the court in *Nevarez Jurado* concluded that because Nevarez Jurado's deferred action remained valid when he was detained, and that deferred action grant had not been revoked, he was "protected from removal." *Id.* at *10. As the *Nevarez Jurado* court stated:

> At bottom, it is difficult to square the government's conception of deferred action here—as an exercise of pure discretion that can shift on a dime—with the Supreme Court's past pronouncements on the topic. For example, in his partial concurrence in *Regents*, Justice Thomas described the effect of DACA's provision of deferred action as creating "a new category of aliens . . . *exempt from statutory removal procedures*," [*Dep't of Homeland Sec. v. Regents of the Univ. of Cal*.,] 591 U.S. [1,] 54 [(2020), (Thomas, J., concurring in part and dissenting in part)] (emphasis added), while Chief Justice Roberts, writing for the Court, characterized the program as providing a "two-year *forbearance of removal*," *id.* at 9 (emphasis added). This understanding of deferred action in the context of Nevarez Jurado's case makes sense—the government has exercised its discretion and set a time frame in which its decision applies. And agreeing with the government's argument in this case would result in a system where grants of deferred action would have no effect—not the system envisioned by Justice Scalia where "no action will . . . be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *See* [*Am.- Arab Anti-Discrimination Comm.*], 525 U.S. at 484, (citation and internal quotation marks omitted).

2025 WL 3687264, at *9. Because Nevaro Jurado's "unrevoked grant of deferred action" had not expired, he had shown that "there [was] no significant likelihood of his removal in

5

the reasonably foreseeable future." *Id.* at *10 (quotation omitted). The court further determined that Nevarez Jurado's ongoing detention violated his rights under the Fifth Amendment's Due Process clause. *Id.* at *10–12. Nevaro Jurado was released. *Id.* at *12.

Respondents here argue that Victor "incorrectly alleges that his pending U-Visa application impedes Respondents' ability to detain and potentially remove him." ECF No. 4 at 18. Respondents maintain that "deferred action is an exercise of prosecutorial discretion," *id.* at 18, and when Victor was arrested on January 7, 2026, "ICE determined that Navarro was not clearly and beyond a doubt entitled to be admitted to the United States," ECF No. 5 ¶ 7. While it is true that a petitioner "may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS." 8 C.F.R. § 214.14(d)(3), Respondents here have not provided any legal authority to support that Victor's arrest in an immigration sweep was an act of their discretion *on Victor's U-visa application or deferred action*, nor have they provided any facts supporting that any circumstances have changed since less than two months ago when he was granted deferred action. Respondents provide no facts indicating that Victor's employment authorization was revoked, that his deferred action was terminated, or that a determination was made that the employment authorization or deferred action were "no longer warranted or were granted in error." *See* ECF No. 1-1 at 8 (notifying Victor that USCIS "reserve[d] the right to revoke [his] employment authorization and terminate the grant of deferred action at any time if it determines they are no longer warranted or were granted in error.") Indeed, Victor explains that as of his January 14, 2026 reply brief, he has "still not been placed in Removal Proceedings and has never been issued a Notice to Appear" despite being detained since

6

January 7, 2026. ECF No. 6 at 2. There are simply no factual allegations to support that Respondents revoked Victor's deferred action, and as such, no basis for his detention. *See Nevarez Jurado*, 2025 WL 3687264, at *10.

"In the context of deferred action recipients, district courts have found both immediate release and a bond hearing to be appropriate remedies." *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13 (W.D. Tex. Oct. 2, 2025); *accord Nevarez Jurado,* 2025 WL 3687264, *12. Here, USCIS has already determined that Victor is not a "risk to national security or public safety" by virtue of its bona fide determination and grant of employment authorization and deferred action. *See B.D.A.A. v. Bostock*, Civ. No. 6:25-cv-02062, 2025 WL 3484912, at *5 (D. Or. Dec. 4, 2025) (quoting *Kothari v. Dir. of USCIS*, No. 3:24 C 50101, 2025 WL 732075, at *3 (N.D. Ill. Jan. 24, 2025)); *see also Nevarez Jurado*, 2025 WL 3687264, at *12 (noting that USCIS "determines whether the petitioner poses a risk to national security or public safety" and conducts "background and security checks" (quoting USCIS Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited Jan. 17, 2026))). Accordingly, Victor will be ordered released.[4]

---

[4] Victor's claims that he is entitled to a bond hearing under 8 U.S.C. § 1226(a) or that he is a member of the *Maldonado Bautista* class need not be addressed in light of the resolution of the Petition on deferred action grounds. *See* Pet. at 6–11. Likewise, to the extent Victor raises an Administrative Procedure Act or regulatory claim, *see* Pet. at 14–15, 17, those issues will not be addressed.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT** Petitioner Victor G.'s Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED** as follows:

1. The Court **DECLARES** Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

2. Respondents shall release Petitioner from custody as soon as practicable, but not later than within 48 hours of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 17, 2025, at 3:50 p.m.	s/ Eric C. Tostrud
	Eric C. Tostrud
	United States District Court